IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARY TRANSUE, | ) | CASE NO. 1:14-CV-1135 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| CURTISS-WRIGHT FLOW CONTROL | ) | |
| CORPORATION, et al. | ) | **OPINION & ORDER ON** |
| | ) | **DEFENDANT'S MOTION FOR** |
| Defendants. | ) | **SUMMARY JUDGMENT** |

Plaintiff Mary Transue filed suit under 42 U.S.C. § 12101 et seq. alleging that Defendants Curtiss-Wright Flow Control Corporation, et al., terminated her employment in violation of the Americans with Disabilities Act. (Doc. No. 1). Specifically, Plaintiff alleged Defendants discriminated against her on the basis of disability by refusing to provide a reasonable accommodation. (*Id.*). The matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 42), Plaintiff's Response in Opposition to the Motion (Doc. No. 48), and Defendant's Reply in Support of the Motion. (Doc. No. 50).

For the reasons set forth below, the Court DENIES Defendant's Motion for Summary Judgment.

**I. FACTS**

Plaintiff began working for Defendant as a CNC machinist in 2006. While performing her job, Plaintiff would come into contact with chemical coolant. In late summer of 2011, Defendant changed the coolant used in all of its machines, including the one operated by Plaintiff, to TRIM Microsol. In March of 2012, Plaintiff developed contact dermatitis, including

1

a rash and pustule lesions, on her hands and forearms.  Plaintiff filed an Ohio Workers' Compensation claim on May 10, 2012, and underwent treatment and testing with Dr. Helen Torok, a dermatologist, to determine the cause of her dermatitis. Dr. Torok performed standard allergen testing that was not specific to the chemicals Plaintiff worked with as a machinist. Plaintiff was temporarily transferred to Defendant's Quality Assurance department on June 18, 2012, and her condition improved while working in this position.  On July 10, 2012, Dr. Torok emailed Defendant instructing that Plaintiff should continue to work in the Quality Control department due to her allergies.  A week later, Dr. Torok informed Defendant that Plaintiff could return to her machining job with the use of gloves, but her contact dermatitis returned, and Plaintiff again sought medical treatment at Concentra.

Defendant provided Plaintiff with potential barriers to wear while she attempted to continue working at her usual position, including gloves made of various materials, sleeves, and barrier creams.  After several months of use with nitrile gloves, the allergic reaction spread to Plaintiff's forearms, and it was determined she was also allergic to the nitrile gloves.  Latex gloves and vinyl sleeves were then tried; it appeared the vinyl sleeves protected her arms, but the latex gloves did not provide an adequate chemical barrier, and the conditioned worsened on her hands.   Butyl gloves were provided to Plaintiff, but had to be removed during the CNC process for manipulation of the parts, and thus did not provide adequate protection.  Defendant purchased vinyl gloves, but Plaintiff was not given an opportunity to try them while working.

Plaintiff changed her Workers' Compensation treating source from Concentra Medical Center to Dr. Kevin L. Trangle, an Occupational Environmental Medicine specialist, in August of 2012.  At this point it was still not determined what specifically was causing the contact dermatitis.  Dr. Trangle sent multiple emails to Defendant, first explaining what testing needed

performed in order to determine the cause of Plaintiff's dermatitis, and that, once the cause was determined, the process by which Plaintiff worked as a CNC operator might be altered to allow her to continue working at that position.  Testing eventually showed her condition was a result of Plaintiff experiencing an allergic reaction to the new coolant.

Defendant scheduled Plaintiff for allergy testing with Dr. Torok, and informed her of the scheduled testing three days before it was to take place.  Plaintiff did not participate in the testing, and was placed on unpaid leave.  Defendant sent Plaintiff a letter informing her that the testing was rescheduled for October 24, 2012, and failure to participate would lead to her termination.  Plaintiff attended the scheduled testing, which revealed Plaintiff was allergic to the new coolant (TRIM Microsol) used in her machine.  Defendant placed Plaintiff on paid leave.  Defendant further sent a letter to Dr. Trangle including Plaintiff's test results showing allergy to the coolant, and requested his opinion as to whether Plaintiff was able to return to work as a machinist.  Before receiving a response from Dr. Trangle, Defendant sent Plaintiff a letter converting her paid leave to unpaid leave, stating the change was due to Dr. Tangle's failure to respond to the November 11, 2012 letter.

Dr. Trangle sent multiple correspondence to Defendant offering various suggestions of potential accommodations to allow Plaintiff to continue working with the company.  In a letter sent from Dr. Trangle to Hazel Pauley, dated October 16, 2012, Dr. Trangle stated as follows:

> It may be that going to an all-glove policy could solve the problem in regards to Ms. Transue.  There are a few issues, however, that need to be considered if this is the approach the company wished to take.  …[I]t is not unusual in my experience…that there is enough aerosolization of the liquid that even with an all-glove policy it is quite possible the individual will indeed have skin exposure to the droplets and micro particles in the air….  In an allergic individual, such aerosolization is enough to precipitate a dermatitis reaction.  The only way to determine if this is

3

> indeed going to be the problem or the case would be to put her back in the workplace and see if she has a reaction despite an all-glove policy.
>
> …
>
> One must keep in mind, however, that with her atopic skin, even if the glove does provide a measure of protection, increased moisture and maceration of the skin in the glove in her particular instance may be a problem for her. Once again, this would have to be tested and seen. Furthermore, there is usually aerosolization of coolant and/oil products in the course of the industrial process. As such even with gloving it is possible that enough of the particulates are airborne that she may well have a reaction….

(Affidavit of Kevin Trangle, M.D., Ex. C).

Further, On March 15, 2013, Plaintiff's attorney responded to a letter from Defendant inquiring as to whether Plaintiff had obtained other employment and intended to resign from her position with Curtiss-Wright. Plaintiff's response indicated she had repeatedly requested accommodations, stated she did not wish to resign, and reiterated her requests for accommodations. In May of 2013, Defendant sent a letter to Plaintiff stating it was terminating her employment for not providing FMLA certification paperwork to MetLife. Defendant further stated Plaintiff was terminated due to the company's inability to protect her from exposure to the coolant, metals, and nitrile gloves which caused her positive allergic response, and that there were no other positions available for which she was qualified and would isolate her from the contaminants. (Affidavit of Daryl Gagliargi, Ex. B).

Prior to her termination, Plaintiff applied for various vacant Quality Control positions with Defendant company, but was not selected to fill the vacancies. Further, when she heard of openings in the Quality Control department, Plaintiff sent emails to Defendant requesting a transfer to these positions. Plaintiff subsequently obtained a job working as an inspector for another machining company, Jerpbak-Bayless. At Jerpbak-Bayless, she was again exposed to

TRIM Microsol and developed dermatitis. Plaintiff terminated her employment after a few weeks, and the condition resolved after she was no longer exposed to the coolant. Plaintiff began working at Pet Supplies Plus. Plaintiff does not allege any current problems relating to contact dermatitis.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It can discharge this burden in two ways: by producing evidence to indicate there is no genuine issue of material fact, or by demonstrating that the nonmoving party fails to show sufficient evidence to establish the existence of an element essential to that party's case. *Id.*

If the moving party has met its burden, the nonmoving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (*citing* Rule 56 and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence in support of the nonmoving party's position will not defeat a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). There must be evidence on which a jury could reasonably find for the nonmoving party. *Id.*

When reviewing summary judgment motions, a court must view the evidence, and the reasonable inferences that can be drawn from it, in a light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. Cases proceed to trial, even if a party's evidence is

inconsistent, because in reviewing a motion for summary judgment, weighing the evidence and making credibility determinations are prohibited. *Amerson v. Waterford Twp.*, 562 F. App'x 484, 488 (6th Cir. 2014) (*quoting Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011)). Even so, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[t]he blatantly contradictory standard is a difficult one to meet and requires opposing evidence that is largely irrefutable." *Amerson*, 562 F. App'x at 489. "Facts that are not blatantly contradicted by [evidence such as a video] recording remain entitled to an interpretation most favorable to the non-moving party." *Coble*, 634 F.3d at 870.

### III. LAW & ANALYSIS

The Americans with Disabilities Act (ADA) makes it unlawful for an employer to "discriminate against a qualified individual on the basis of a disability." 42. U.S.C. 12112(a). The statute defines "discriminate" to include "not making reasonable accommodation to the known physical…limitations of an otherwise qualified individual with a disability." 42 U.S.C. 12112(b)(5)(A). An "otherwise qualified individual" is an individual who "with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. 12111(8). An employer does not violate the statute where it "can demonstrate that the accommodation would impose an undue hardship" on the employer. 42 U.S.C. 12112(b)(5)(A).

Courts utilize a burden-shifting analysis for claims under the ADA. *Rorrer v. City of Stow*, 743 F.3d 1025, 1038 (6th Cir. 2014). A Plaintiff must first establish a prima facie case for discrimination by showing "'that he is disabled and otherwise qualified for the position, either with or without reasonable accommodation.'" *Id.* (*quoting Keith v. Cnty. Of Oakland*, 703 F.3d

6

918, 923 (6th Cir. 2013)). "Once the plaintiff has established a prima facie case, 'the burden shifts to the defendant to show that accommodating the plaintiff would impose an undue hardship on the operation of its business.'" Id. at 1039. The employer bears the burden of proving a proposed accommodation would impose an undue hardship. Id. (quoting Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1183, n. 10, 1186 (6th Cir. 1996) (abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., 681 F.3d 312, 315-16 (6th Cir. 2012) (en banc)).

### A. Disability

Defendant now asks this Court to grant summary judgment on the issue of whether Plaintiff is an individual with a disability within the meaning of the ADA as a matter of law. Defendant asserts it is entitled to judgment as a matter of law because Plaintiff does not suffer from a physical impairment, and is not substantially limited in a major life activity. Plaintiff, however, sufficiently raises an issue of fact as to whether her contact dermatitis constitutes a disability under the ADA.

An individual is disabled under the ADA where she has "(A) a physical or mental impairment that substantially limits one or more major life activities…; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. 12102(1). A Physical impairment is "[a]ny physiological disorder or condition…affecting one or more body systems, such as…immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. 1630.2(h)(1). A plaintiff has a "record of impairment" where he has a history of impairment that substantially limited one or more major life activities. Neely v. Benchmark Family Servs., No. 15-3550, 2016 WL 364774, *5 (6th Cir. Jan. 26, 2016). "To establish a 'record of disability,' a

'plaintiff only need to show that "at some point in the past" he had [a substantially limiting impairment.]'" *Id*.

"Major life activities" is defined to include, but is not limited to:

> (i) Caring for oneself, performing manual tasks,…working; and (ii) The operation of a major bodily function, including functions of the immune system, special sense organs and skin; [and] normal cell growth…. The operation of a major bodily function includes the operation of an individual organ within a body system.

29 C.F.R. 1630.2(h)(2)(i)(1). "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as …medication." *Verhoff v. Time Warner Cable, Inc.*, 299 Fed. App'x 488, 492, fn. 3 (6th Cir. 2008) (*quoting* ADA Amendments Act of 2008, Pub. L. No. 110-325, 3(4)(E)(i), 122 Stat. 3553 (2008)); *see Black v. Roadway Express*, 297 F.3d 445, 452 (6th Cir. 2002) (finding consideration that plaintiff was able to work at other truck driving company that provided cruise control device that made plaintiff able to drive not appropriate under ADA analysis because "workplace accommodation of an individual's impairment cannot be taken into account in assessing whether that individual is substantially limited in the major life activity of working.") (*citing Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 786 (3rd Cir. 1998)).

"'Substantially limits' is not meant to be a demanding standard" and "shall be construed broadly in favor of expansive coverage." 29 C.F.R. 1630.2(j)(1). Recognizing Congressional intent for broad coverage, the Sixth Circuit determined the Amendments "reject the narrow interpretation of what constitutes a disability as set forth in [previous ruling case law] *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999), and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002)." *Robbins v. Saturn Corp.*, 532 Fed. App'x 623, 628 (6th Cir. 2013) (*citing* ADA

8

Amendments Act of 2008, Pub. L. No. 110-325, 2(b), 122 Stat. 3553, 3554 (2008)); *see Jenkins v. Nat'l Bd. Of Med. Examiners*, No. 08-5371, 2009 WL 331638, *1-3 (6th Cir. Feb. 11, 2009) ("Congress overturned the definition of 'substantially limits' put forward in *Toyota* and directed the courts to interpret the term in a more inclusive manner."). Further, the ADA Amendments Act "directs that '[a]n impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability.'" *Id.*

"In order to demonstrate a substantial limitation in the major life activity of working, [a plaintiff] need only demonstrate that he is 'significantly restricted in the ability to perform *either* a class of jobs *or* a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Black*, 297 F.3d at 452 (*quoting* 29 C.F.R. 1630.2(j)(3)(i)). Relying on a pre-Amendments case, the court in *Black* determined that "a plaintiff was significantly restricted in his ability to perform a class of jobs or a broad range of jobs in various classes where his injury precluded him from performing at least fifty percent of the jobs previously available to him. *Id.* at 453 (*citing Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 255-56 (6th Cir. 2000)).

Parties do not dispute that Plaintiff developed contact dermatitis that manifested in painful pustule blistering and allergic rash on Plaintiff's hands and arms, resulting from contact with the coolant used in her CNC machine. Defendant argues Plaintiff is not disabled because she does not currently suffer from contact dermatitis, and that evidence does not show she is limited in a major life activity. However, Plaintiff asserts she is disabled due to this condition substantially limiting her ability to perform the major life activities of working, performing manual tasks, and lifting, as well as interference with the operation of the bodily function of her skin.

9

This Court finds no merit to Defendant's argument that Plaintiff's contact dermatitis, developed as a direct result of working with TRIM coolant as part of her machining operations, does not fall under the scope of the ADA because she currently is not suffering from the condition. As stated above, impairments are considered without regard to the ameliorative effects of any mitigating measures, including medical treatment or accommodations. 42 U.S.C. 12102(4)(E)(i). Further, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. 12102(4)(D). This Court is not compelled by Defendant's assertion that Plaintiff's dermatitis, which would undoubtedly return each time she works with TRIM coolant as part of a machining process, does not constitute an impairment under the broad scope of the ADA definition of disability. 42 U.S.C. 12102(4)(A).

Defendant, relying solely on pre-amendment case law,[1] argues that Plaintiff's impairment limits her ability to work in neither a broad class of jobs, nor in a narrow class of jobs, because she is limited only from jobs that expose her to TRIM Microsol. In support of its argument, Defendant points out that Plaintiff was able to obtain another machining job within months, which it argues undermines Plaintiff's allegation that she is precluded from working in the machining field. (Def. Reply Brief in Support of Motion for Summary Judgment p. 3). Further, Defendant argues that Plaintiff has not offered sufficient evidence to show that a significant

---

[1] In the ADA Amendments Act of 2008, "Congress announced, in statutory language, that it 'rejected' prior Supreme Court interpretations of the Americans with Disabilities Act (ADA) which set an extremely high standard for what kinds of impairments could constitute a qualifying disability. The ADAAA stated that the courts were to construe the ADA's definition of disability in favor of 'broad coverage.'" Deborah A. Widiss, *Still Kickin' After All These Years: Sutton and Toyota as Shadow Precedents*, 63 Drake L. Rev. 919, 920 (2015). Although the Court acknowledges that certain holdings from cases decided prior to the 2008 amendments were not affected, the undersigned notes Defendant's mischaracterization of *Verhoff v. Time Warner Cable, Inc.*, 299 Fed. App'x 488, 492, fn.2 (6th Cir. 2008), which upheld the prior court's granting of summary judgment under the ADA utilizing the now-overruled case law because the amendments were not retroactive in application, and the defendant's conduct occurred prior to the enforcement date of the amendments. Indeed, throughout the opinion the court references changes in law that courts should use going forward. *Id*. at 492-93, fns.2-4.

number of other machining companies use the same coolant that causes the allergic reaction that makes her unable to perform machining operations. Specifically, Defendant contends Plaintiff's inquiries with only two other machining companies (both of which did use TRIM coolant), along with the report of Vocational Expert Barbara Burk, did not adequately establish that significant numbers of machining companies use the prohibitive coolant. (Def. Brief in Support of Motion for Summary Judgment p. 9).

Plaintiff sets forth sufficient evidence to raise an issue of material fact as to whether she is substantially limited in her ability to work due to her contact dermatitis. In support, Plaintiff provides testimony of Defendant employees that a reasonable fact-finder could conclude establishes machining as a broad class of jobs. (Pl. Brief in Opposition p. 8-9 (citing Depo. Don Nielson p. 7; citing Depo. Rodney Smith p. 11)). Additionally, Plaintiff offers the opinion of Ms. Burk, whose report concluded Plaintiff was precluded from any occupation in the machining field as a result of her allergy to the coolant.[2] (*Id.* at p. 7-9). Plaintiff also points out that, although she was hired by another machining company, exposure to TRIM Microsol forced her to quit after only one month. (*Id.* at p. 6). Further, despite 25 years of experience working in the machining industry, Plaintiff asserts she has not been able to find employment that is lucratively-equal to her previous machining jobs, and is working as a dog groomer. (*Id.* at p. 8).

The Court finds that Defendant has not met its burden to establish that no reasonable jury could find that Plaintiff's contact dermatitis substantially limits her ability to work in a broad class of jobs. Plaintiff points to specific facts, as well as testimony on the record, that when interpreted in a light most favorable to the non-moving party, potentially undermine Defendant's

---

[2] Although the testimony of a vocational expert that is "merely conclusory" may not constitute sufficient evidence to raise a genuine issue of material fact that a plaintiff is substantially limited in the major life activity of working, there is no indication here that the report of Ms. Burk falls under this designation. *See Black v. Roadway Express, 297 F.3d 445*, 454-55 (6th Cir. 2002) (*citing Doren v. Battle Creek Health Sys., 187 F.3d 595*, 598-99 (6th Cir. 1999)).

11

arguments. Accordingly, Plaintiff has set forth sufficient evidence to demonstrate a genuine issue of fact, and summary judgment is not appropriate.

## IV.  CONCLUSION

For the foregoing reasons, the undersigned DENIES Defendant's Motion for Summary Judgment (Doc. No. 42).

/s Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  April 28, 2016