IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARY TRANSUE, | ) | CASE NO. 1:14-CV-1135 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| CURTISS-WRIGHT FLOW CONTROL | ) | |
| CORPORATION, et al. | ) | **OPINION & ORDER ON PLAINTIFF'S** |
| | ) | **MOTION FOR SUMMARY** |
| Defendants. | ) | **JUDGMENT** |

Plaintiff Mary Transue filed suit under 42 U.S.C. § 12101 et seq. alleging that Defendants Curtiss-Wright Flow Control Corporation, et al., terminated her employment in violation of the Americans with Disabilities Act. (Doc. No. 1). Specifically, Plaintiff alleged Defendants discriminated against her on the basis of disability by refusing to provide a reasonable accommodation. (*Id.*). The matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 43-3), Defendants' Response in Opposition to the Motion (Doc. No. 49), and Plaintiff's Reply in Support of the Motion. (Doc. No. 51).

For the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment.

## I. FACTS

Plaintiff began working for Defendant as a CNC machinist in 2006. While performing her job, Plaintiff would come into contact with chemical coolant. In late summer of 2011, Defendant changed the coolant used in all of its machines, including the one operated by Plaintiff, to TRIM Microsol. In March of 2012, Plaintiff developed contact dermatitis, including

1

a rash and pustule lesions, on her hands and forearms. Plaintiff filed an Ohio Workers' Compensation claim on May 10, 2012, and underwent treatment and testing with Dr. Helen Torok, a dermatologist, to determine the cause of her dermatitis. Dr. Torok performed standard allergen testing that was not specific to the chemicals Plaintiff worked with as a machinist. Plaintiff was temporarily transferred to Defendant's Quality Assurance department on June 18, 2012, and her condition improved while working in this position. On July 10, 2012, Dr. Torok emailed Defendant instructing that Plaintiff should continue to work in the Quality Control department due to her allergies. A week later, Dr. Torok informed Defendant that Plaintiff could return to her machining job with the use of gloves, but her contact dermatitis returned, and Plaintiff again sought medical treatment at Concentra.

Defendant provided Plaintiff with potential barriers to wear while she attempted to continue working at her usual position, including gloves made of various materials, sleeves, and barrier creams. After several months of use with nitrile gloves, the allergic reaction spread to Plaintiff's forearms, and it was determined she was also allergic to the nitrile gloves. Latex gloves and vinyl sleeves were then tried; it appeared the vinyl sleeves protected her arms, but the latex gloves did not provide an adequate chemical barrier, and the conditioned worsened on her hands. Butyl gloves were provided to Plaintiff, but had to be removed during the CNC process for manipulation of the parts, and thus did not provide adequate protection. Defendant purchased vinyl gloves, but Plaintiff was not given an opportunity to try them while working.

Plaintiff changed her Workers' Compensation treating source from Concentra Medical Center to Dr. Kevin L. Trangle, an Occupational Environmental Medicine specialist, in August of 2012. At this point it was still not determined what specifically was causing the contact dermatitis. Dr. Trangle sent multiple emails to Defendant, first explaining what testing needed

performed in order to determine the cause of Plaintiff's dermatitis, and that, once the cause was determined, the process by which Plaintiff worked as a CNC operator might be altered to allow her to continue working at that position. Testing eventually showed her condition was a result of Plaintiff experiencing an allergic reaction to the new coolant.

Defendant scheduled Plaintiff for allergy testing with Dr. Torok, and informed her of the scheduled testing three days before it was to take place. Plaintiff did not participate in the testing, and was placed on unpaid leave. Defendant sent Plaintiff a letter informing her that the testing was rescheduled for October 24, 2012, and failure to participate would lead to her termination. Plaintiff attended the scheduled testing, which revealed Plaintiff was allergic to the new coolant (TRIM Microsol) used in her machine. Defendant placed Plaintiff on paid leave. Defendant further sent a letter to Dr. Trangle including Plaintiff's test results showing allergy to the coolant, and requested his opinion as to whether Plaintiff was able to return to work as a machinist. Before receiving a response from Dr. Trangle, Defendant sent Plaintiff a letter converting her paid leave to unpaid leave, stating the change was due to Dr. Tangle's failure to respond to the November 11, 2012 letter.

Dr. Trangle sent multiple correspondence to Defendant offering various suggestions of potential accommodations to allow Plaintiff to continue working with the company. In a letter sent from Dr. Trangle to Hazel Pauley, dated October 16, 2012, Dr. Trangle stated as follows:

> It may be that going to an all-glove policy could solve the problem in regards to Ms. Transue. There are a few issues, however, that need to be considered if this is the approach the company wished to take. …[I]t is not unusual in my experience…that there is enough aerosolization of the liquid that even with an all-glove policy it is quite possible the individual will indeed have skin exposure to the droplets and micro particles in the air…. In an allergic individual, such aerosolization is enough to precipitate a dermatitis reaction. The only way to determine if this is

3

> indeed going to be the problem or the case would be to put her back in the workplace and see if she has a reaction despite an all-glove policy.
>
> …
>
> One must keep in mind, however, that with her atopic skin, even if the glove does provide a measure of protection, increased moisture and maceration of the skin in the glove in her particular instance may be a problem for her.  Once again, this would have to be tested and seen.  Furthermore, there is usually aerosolization of coolant and/oil products in the course of the industrial process.  As such even with gloving it is possible that enough of the particulates are airborne that she may well have a reaction….

(Affidavit of Kevin Trangle, M.D., Ex. C).

Further, On March 15, 2013, Plaintiff's attorney responded to a letter from Defendant inquiring as to whether Plaintiff had obtained other employment and intended to resign from her position with Curtiss-Wright.  Plaintiff's response indicated she had repeatedly requested accommodations, stated she did not wish to resign, and reiterated her requests for accommodations.  In May of 2013, Defendant sent a letter to Plaintiff stating it was terminating her employment for not providing FMLA certification paperwork to MetLife.  Defendant further stated Plaintiff was terminated due to the company's inability to protect her from exposure to the coolant, metals, and nitrile gloves which caused her positive allergic response, and that there were no other positions available for which she was qualified and would isolate her from the contaminants.  (Affidavit of Daryl Gagliargi, Ex. B).

Prior to her termination, Plaintiff applied for various vacant Quality Control positions with Defendant company, but was not selected to fill the vacancies.  Further, when she heard of openings in the Quality Control department, Plaintiff sent emails to Defendant requesting a transfer to these positions.  Plaintiff subsequently obtained a job working as an inspector for another machining company, Jerpbak-Bayless.  At Jerpbak-Bayless, she was again exposed to

4

TRIM Microsol and developed dermatitis.  Plaintiff terminated her employment after a few weeks, and the condition resolved after she was no longer exposed to the coolant.  Plaintiff began working at Pet Supplies Plus.  Plaintiff does not allege any current problems relating to contact dermatitis.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  It can discharge this burden in two ways: by producing evidence to indicate there is no genuine issue of material fact, or by demonstrating that the nonmoving party fails to show sufficient evidence to establish the existence of an element essential to that party's case. *Id.*

If the moving party has met its burden, the nonmoving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (*citing* Rule 56 and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  The existence of a mere scintilla of evidence in support of the nonmoving party's position will not defeat a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).  There must be evidence on which a jury could reasonably find for the nonmoving party. *Id.*

When reviewing summary judgment motions, a court must view the evidence, and the reasonable inferences that can be drawn from it, in a light most favorable to the nonmoving party. *Matsushita, 475 U.S. at 587.*  Cases proceed to trial, even if a party's evidence is

inconsistent, because in reviewing a motion for summary judgment, weighing the evidence and making credibility determinations are prohibited. *Amerson v. Waterford Twp.*, 562 F. App'x 484, 488 (6th Cir. 2014) (*quoting Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011)). Even so, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[t]he blatantly contradictory standard is a difficult one to meet and requires opposing evidence that is largely irrefutable." *Amerson*, 562 F. App'x at 489. "Facts that are not blatantly contradicted by [evidence such as a video] recording remain entitled to an interpretation most favorable to the non-moving party." *Coble*, 634 F.3d at 870.

### III. LAW & ANALYSIS

The Americans with Disabilities Act (ADA) makes it unlawful for an employer to "discriminate against a qualified individual on the basis of a disability." 42. U.S.C. 12112(a). The statute defines "discriminate" to include "not making reasonable accommodation to the known physical…limitations of an otherwise qualified individual with a disability." 42 U.S.C. 12112(b)(5)(A). An "otherwise qualified individual" is an individual who "with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. 12111(8). An employer does not violate the statute where it "can demonstrate that the accommodation would impose an undue hardship" on the employer. 42 U.S.C. 12112(b)(5)(A).

Courts utilize a burden-shifting analysis for claims under the ADA. *Rorrer v. City of Stow*, 743 F.3d 1025, 1038 (6th Cir. 2014). A Plaintiff must first establish a prima facie case for discrimination by showing "'that he is disabled and otherwise qualified for the position, either with or without reasonable accommodation.'" *Id.* (quoting *Keith v. Cnty. Of Oakland*, 703 F.3d

6

918, 923 (6th Cir. 2013)). "Once the plaintiff has established a prima facie case, 'the burden shifts to the defendant to show that accommodating the plaintiff would impose an undue hardship on the operation of its business.'" Id. at 1039. The employer bears the burden of proving a proposed accommodation would impose an undue hardship. Id. (quoting Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1183, n. 10, 1186 (6th Cir. 1996) (abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., 681 F.3d 312, 315-16 (6th Cir. 2012) (en banc)).

### A. Disability

Plaintiff now asks this Court to grant summary judgment on the issue of whether she is an individual with a disability within the meaning of the ADA as a matter of law. Defendant asserts there is an issue of material fact as to whether Plaintiff's contact dermatitis constitutes a disability under the ADA.

An individual is disabled under the ADA where she has "(A) a physical or mental impairment that substantially limits one or more major life activities…; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. 12102(1). A Physical impairment is "[a]ny physiological disorder or condition…affecting one or more body systems, such as…immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. 1630.2(h)(1). A plaintiff has a "record of impairment" where he has a history of impairment that substantially limited one or more major life activities. Neely v. Benchmark Family Servs., No. 15-3550, 2016 WL 364774, *5 (6th Cir. Jan. 26, 2016). "To establish a 'record of disability,' a 'plaintiff only need to show that "at some point in the past" he had [a substantially limiting impairment.]'" Id.

"Major life activities" is defined to include, but is not limited to:

> (i) Caring for oneself, performing manual tasks,…working; and (ii) The operation of a major bodily function, including functions of the immune system, special sense organs and skin; [and] normal cell growth…. The operation of a major bodily function includes the operation of an individual organ within a body system.

29 C.F.R. 1630.2(h)(2)(i)(1). "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as …medication." *Verhoff v. Time Warner Cable, Inc.*, 299 Fed. App'x 488, 492, fn. 3 (6th Cir. 2008) (*quoting* ADA Amendments Act of 2008, Pub. L. No. 110-325, 3(4)(E)(i), 122 Stat. 3553 (2008)); *see Black v. Roadway Express*, 297 F.3d 445, 452 (6th Cir. 2002) (finding consideration that plaintiff was able to work at other truck driving company that provided cruise control device that made plaintiff able to drive not appropriate under ADA analysis because "workplace accommodation of an individual's impairment cannot be taken into account in assessing whether that individual is substantially limited in the major life activity of working.") (*citing Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 786 (3rd Cir. 1998)).

"'Substantially limits' is not meant to be a demanding standard" and "shall be construed broadly in favor of expansive coverage." 29 C.F.R. 1630.2(j)(1). Recognizing Congressional intent for broad coverage, the Sixth Circuit determined the Amendments "reject the narrow interpretation of what constitutes a disability as set forth in [previous ruling case law] *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999), and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002)." *Robbins v. Saturn Corp.*, 532 Fed. App'x 623, 628 (6th Cir. 2013) (*citing* ADA Amendments Act of 2008, Pub. L. No. 110-325, 2(b), 122 Stat. 3553, 3554 (2008)); *see Jenkins*

*v. Nat'l Bd. Of Med. Examiners*, No. 08-5371, 2009 WL 331638, *1-3 (6th Cir. Feb. 11, 2009) ("Congress overturned the definition of 'substantially limits' put forward in *Toyota* and directed the courts to interpret the term in a more inclusive manner."). Further, the ADA Amendments Act "directs that '[a]n impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability.'" *Id.*

"In order to demonstrate a substantial limitation in the major life activity of working, [a plaintiff] need only demonstrate that he is 'significantly restricted in the ability to perform *either* a class of jobs *or* a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Black*, 297 F.3d at 452 (*quoting* 29 C.F.R. 1630.2(j)(3)(i)). Relying on a pre-Amendments case, the court in *Black* determined that "a plaintiff was significantly restricted in his ability to perform a class of jobs or a broad range of jobs in various classes where his injury precluded him from performing at least fifty percent of the jobs previously available to him. *Id.* at 453 (*citing Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 255-56 (6th Cir. 2000)).

Testimony of a vocational expert that is "merely conclusory" may not constitute sufficient evidence to raise a genuine issue of material fact that a plaintiff is substantially limited in the major life activity of working. *Black*, 297 F.3d at 454-55 (*citing Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 598-99 (6th Cir. 1999)). Testimony may be considered "merely conclusory" where, based on a review of a doctor's affidavit and report of a plaintiff's impairment, the VE concludes the plaintiff is significantly restricted from a class of jobs, as well as a broad range of jobs, and does not provide evidence regarding the number of jobs from which the plaintiff is disqualified due to his impairment. *Id.* However, demonstration of the number and types of jobs does not require "an onerous evidentiary showing," but at least "require[s] the

9

presentation of evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (*e.g.*, 'few,' 'many,' 'most') from which an individual would be excluded because of an impairment." *Id*. at 454, fn. 13 (*quoting* 29 C.F.R. pt. 1630, App. 1630.2(j)).

Parties do not dispute that Plaintiff developed contact dermatitis that manifested in painful pustule blistering and allergic rash on Plaintiff's hands and arms, resulting from contact with the coolant used in her CNC machine. Plaintiff asserts she is disabled as a matter of law due to this condition substantially limiting her ability to perform the major life activities of working, performing manual tasks, and lifting, as well as interference with the operation of the bodily function of her skin. However, Defendant argues Plaintiff is not disabled because she does not currently suffer from contact dermatitis, and that evidence does not show she is limited in a major life activity. This Court finds no merit to Defendant's argument that Plaintiff's allergic reaction does not fall under the scope of the ADA because it cleared up after she stopped working with the coolant, as it would undoubtedly return should she return to her job working as a machinist with Defendant, without an accommodation. *See* 42 U.S.C. 12102(4)(D) ("An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."). However, Plaintiff has not met its burden to show that there exists no issue of material fact as to whether her allergic reaction to the coolant substantially limits her ability to perform one or more major life activities.

While Plaintiff points to specific evidence and testimony in support of her position that her condition substantially limits her ability to work in a broad class of machining jobs, Defendant sufficiently raises a question of fact on this issue so as to avoid summary judgment. Although the 2008 Amendments lowered the threshold to establish disability, a plaintiff must

still establish she is substantially limited in a major life activity. *Neely*, 2016 WL 364774 at *4 ("Though the 2008 Amendments undoubtedly eased the burden required for plaintiffs to establish disability…[a] lesser burden is a burden nonetheless."). Plaintiff argues that, not only is she incapable of performing as a machinist at Curtis-Wright because of their use of the TRIM coolant, but that, due to her allergy, she is effectively barred from working in any machining job. In support, Plaintiff points to the deposition testimony of Paul Ferdenzi, who stated that the "cracking and fissures on her hands" qualify as a disability under the ADA (Depo. Paul Ferdenzi, Esq. p. 33), and Defendant's maintenance supervisor, Don Nielson, who testified that manufacturing depends heavily on machining and coolants. (Depo. Don Nielson p. 7). Additionally, Plaintiff cites to testimony of vocational expert Barbara Burk, who stated that her dermatitis would require a reasonable accommodation, and such necessity would be a "red flag" for other hiring companies, rendering her unemployable for all machining positions. (Affidavit of Barbara E. Burk, C.R.C., L.P.C.).

However, while it is clear from the evidence that Plaintiff is unable to perform her work as a machinist using Defendant's machines utilizing the TRIM coolant due to her allergy, Defendant raises a legitimate dispute as to whether her contact dermatitis blocks her from the broad class of machining jobs. Although Plaintiff provides the testimony of a vocational expert in support, Defendant challenges the probative value of the testimony, and argues it is undermined by the undisputed fact that Plaintiff was hired at another machining position months after working at Curtis-Wright. Plaintiff again asserts the testimony of Ms. Burk in her Reply Brief as a counter-argument to Defendant's position; however, it is not appropriate for the Court to weigh the evidence or make credibility determinations at the summary judgment stage.[1]

---

[1] Without ruling on the probative value of her testimony, the undersigned notes that the report of Ms. Burk does not appear on its face to fall under the designation of "merely conclusory" as established in *Black v. Roadway Express,*

11

Further, although Plaintiff supports her argument by demonstrating that two or three other companies use the TRIM coolant, this Court agrees with Defendant that a question exists as to whether her allergy to this specific coolant keeps her from working in any machining position, as the record shows that there are thousands of different coolants available that may be used by other machining companies.

Further, Defendant points out that Plaintiff does not provide any factual support for her assertion that the allergy substantially limits her ability to perform manual tasks or lifting. Although this Court recognizes that Plaintiff has a very low threshold to prove, she still must support her allegations with more than mere assertions. Plaintiff makes no reference to actual facts or evidence to support that she was unable or limited in performing manual tasks or lifting. Further, Plaintiff's own motion suggests otherwise, as she was able to continue to work in Quality Assurance inspecting parts, despite her condition. Accordingly, summary judgment on the issue of whether Plaintiff was disabled is not appropriate.

### B.  Reasonable Accommodation

Failure to provide a reasonable accommodation for a disabled but otherwise qualified individual may amount to unlawful discrimination under the ADA. "Discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability…unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. 12112(b)(5)(A). "[T]he plaintiff generally must identify the specific job he seeks and demonstrate that he is qualified for that position" to overcome summary judgment. *Rorrer*, 743 F.3d at 1040.  Once a Plaintiff has established a prima facie case that he

---

297 F.3d 445, 454-55 (6th Cir. 2002) (*citing Doren v. Battle Creek Health Sys., 187 F.3d 595*, 598-99 (6th Cir. 1999)).

is disabled and otherwise qualified for a position, with or without accommodation, "the burden shifts to the defendant to show that accommodating the plaintiff would impose an undue hardship on the operation of its business." *Keith*, 703 F.3d at 923. An accommodation imposes an undue hardship if it causes significant difficulty or expense for the employer. 42 U.S.C. 12111(10).

The Sixth Circuit has recognized "[t]he law places a significant burden on employers to accommodate an employee's injuries." *Rorrer*, 743 F.3d at 1044 (*citing Keith*, 703 F.3d at 926-27). Accommodations may include "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. 1630.2(o)(2)(ii). Further, an employer may provide a reasonable accommodation by reassigning an employee to a vacant position with different responsibilities. 29 C.F.R. 1630.2(o)(2)(ii). Absent undue hardship, an employer is required to provide a reasonable accommodation for an employee "who meets the definition of disability under the 'actual disability' prong…or 'record of' prong," but not for an employee "who meets the definition of disability solely under the 'regarded as' prong." 29 C.F.R. 1630.2(o)(4).

Assuming arguendo that Plaintiff meets her burden of showing she is disabled under the ADA, Defendant has sufficiently demonstrated a question of fact as to whether they were in violation of the ADA by failing to provide Plaintiff with a reasonable accommodation for her contact dermatitis. The facts show Plaintiff requested two possible accommodations from Defendant to allow her to continue her work as a machinist: barrier protection from the coolant, or a change in the machining chemicals and/or process. According to Plaintiff, Defendant violated the ADA when it did not allow her to try vinyl gloves it had purchased, and that it did

not legitimately consider changing the coolant or machining process. Defendant argues that it acted in accordance with the requirements of the ADA, but that it was unable to provide an adequate accommodation that would allow her to continue her work as a machinist.

Defendant points to sufficient evidence to overcome summary judgment on the issue of reasonable accommodation to allow Plaintiff to continue working in her machining position. There is no dispute that Plaintiff was provided various barrier methods, including gloves, sleeves, and barrier creams, all of which were ineffective in protecting her completely from the coolant which caused her allergic reaction. In support of its decision to abandon its efforts to protect Plaintiff through the use of gloves or other barriers, Defendant points specifically to the previous failure of gloves and sleeves, as well as to the opinion of Dr. Trangle that barrier methods would not provide complete protection for Plaintiff due to the probable aerosolization of the coolant. (Def. Brief in Opp. p. 3-4). Although Plaintiff argues she should have been allowed to try the vinyl gloves because the vinyl sleeves had provided some protection, and that Defendant's reliance on the opinion of Dr. Trangle was based on a mischaracterization of his statements, Defendant has established a sufficient question of fact as to the reasonableness of their decision to discontinue its attempts to find a reasonable accommodation that would allow Plaintiff to continue working at a machining position.

The Court further finds that Plaintiff does not establish sufficient facts to show summary judgment is proper on whether Defendant considered changing the engineering process, including use of the original, or an alternative, coolant, as a reasonable accommodation. Although Plaintiff points to evidence showing Defendant's Human Resources Department made inquiries as to the engineering process as late as 2014 (Pl. Brief, Mtn. Summary Judgment, p. 21 (citing Depo. Tim Hall, p. 6)), Defendant cites to testimony indicating at least some discussion

occurred between departments relating to this issue. (Def. Brief in Opp. p. 4 (citing Depo. Lisa Sozzi p. 114-15)). Further, other employee testimony on the record indicates that Defendant discussed continuing to use the old coolant while exploring potential options to allow Plaintiff to return to work on her original machine. (Pl. Brief, Mtn. Summary Judgment, p. 20 (citing Depo. Carl Ondraka, p. 32-33)). Although Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment provides little evidence in rebuttal, this Court finds that Plaintiff failed to provide clear evidence as to this factor so as to warrant summary judgment.

Plaintiff further requested as a reasonable accommodation a transfer to an alternative position where she would not be exposed to the coolant. At the summary judgment stage, a plaintiff must identify the specific job she seeks as a reasonable accommodation, and demonstrate that she is qualified for that position. *Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007) (*citing Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004)). Plaintiff requested a transfer to the Quality Assurance department, and applied for vacancies within that department on multiple occasions. Plaintiff again offers testimony from VE Burk, as well as from various witnesses employed by Defendant, in addition to providing her work experience and training. (Pl. Brief, Mtn. Summary Judgment p. 26-35). Specifically, in support of her assertion that she was qualified to work in that department, Plaintiff points out that Defendant transferred her to a quality inspection position temporarily after she developed her allergy, and she was able to perform the essential functions of the job. (*Id.* at p. 27-28). Further, she cites testimony of the Quality Assurance department leader, Michael Przybysz, who stated she was able to transfer to this position temporarily because it involved the same skills as machining. (*Id.*). Plaintiff also points to the job description itself, allowing for Level 2 or Level 3 skills, her own testimony that she believes she has Level 2 (but not Level 3) knowledge and

15

abilities, and deposition testimony of Defendant that Plaintiff contends does not adequately establish she did not have the requisite skills to perform the essential job functions.  (*Id.* at p. 29-31).

However, despite Plaintiff's arguments, Defendant points to sufficient evidence to show that a genuine issue of material fact exists as to whether Plaintiff was qualified to perform the essential functions required for the relevant positions in Quality Assurance.  Defendant asserts that, despite Plaintiff's determination that she can perform the Quality Assurance jobs, her applications were denied because she did not meet the minimum qualifications.  Defendant points to deposition testimony of Plaintiff where she admitted lacking experience in that department other than inspecting her own machined parts, and that she did not meet all the written requirements in the job description, specifically as to essential functions of the position.  (Def. Brief in Opp. p. 4-5 (citing Depo. Mary Transue p. 95-96)).  Further, Defendant offers in support the testimony of Quality Assurance Manager Don Henderson, who testified that Plaintiff did not have the requisite skill set, as depicted in her application, including the ability to run specialized equipment. (*Id.* at p. 5 (citing Depo. Don Henderson p. 69-75)).   Accordingly, there is a genuine dispute between the parties as to whether there was a vacancy in Quality Assurance where Plaintiff would not be exposed to the coolant for which she was qualified.

### C. Interactive Process

An employer is required to engage in an individualized inquiry with a disabled employee when necessary to determine an appropriate reasonable accommodation.  *Rorrer*, 743 F.3d at 1040 (*citing Keith*, 703 F.3d at 923); 29 C.F.R. 1630.2(o)(3).  "The individualized inquiry is an 'interactive process' in which 'both parties have a duty to participate in good faith.'"  *Id.* (*quoting Kleiber*, 485 F.3d at 871).  "If this process fails to lead to reasonable accommodation of

the disabled employee's limitations, responsibility will lie with the party that caused the breakdown." *Id*. (*quoting* EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 805 (7th Cir. 2005)). "Although mandatory, failure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that he proposed a reasonable accommodation." *Id.* (*citing* Keith, 703 F.3d at 929; Breitfelder v. Leis, 151 Fed. App'x 379, 386 (6th Cir. 2005)).

In *Rorrer*, the court provided several examples of situations that may indicate a failure of good faith participation in the interactive process. *Id*. For instance, "[f]ailure to discuss a reasonable accommodation in a meeting in which the employer takes an adverse employment action against an injured employee may demonstrate a lack of good faith." *Id*. (*citing* EEOC v. Chevron Philips Chem. Co., 570 F.3d 606, 622 (5th Cir. 2009)). Another example provides that "failing to assist an employee in seeking an accommodation may suggest bad faith." *Id*. (*citing* Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc., 439 F.3d 894, 902 (8th Cir. 2006)). Further, a "cursory medical examination and summary conclusion that a disabled individual is not fit for employment violates an employer's duty to engage in the interactive process in good faith." *Id.* at 1041 (*citing* Keith, 703 F.3d at 924). Additionally, although "there is nothing wrong with involving…representatives in the interactive process," the Sixth Circuit has expressed that failure of the parties to communicate directly may indicate a less than "model interactive process." *Kleiber*, 485 F.3d at 871.

However, a plaintiff must not only show a failure of the interactive process, but must also provide evidence that her employer was responsible for that failure, in violation of the ADA. In *Kleiber*, although the court determined the interactive process was flawed where the parties conducted the process entirely through the plaintiff's state vocational rehabilitation

17

representative, and did not communicate directly with the plaintiff, the plaintiff's ADA claim failed because he "offered no evidence that [his employer was] to blame for these shortcomings." *Kleiber*, 485 F.3d at 871-72.  Rather, the record indicated the plaintiff's employer participated in good faith, and "[t]he record contain[ed] no suggestion that [the plaintiff] attempted to participate directly," but rather "chose to conduct the interactive process through proxies, and [his employer] obliged."  *Id*. at 872.  The court further found that the defendant employer's consideration of several positions (despite concluding he was precluded from performing those jobs) undercut the assertion of bad faith.  Finally, the court determined the plaintiff's assertion that the defendant's failure to provide information necessary to identify appropriate jobs had no basis because "the record contains no evidence that [the plaintiff or his representatives] requested any information during the interactive process."

Here, although Plaintiff points to action (or inaction) by Defendant that she suggests shows a lack of good faith in the interactive process, summary judgment is nonetheless not proper on this issue.  Beyond establishing that both parties have a duty to participate in the interactive process in good faith, "the interactive process is not described in the statute's text." *Kleiber*, 485 F.3d at 871. Although case law has established certain guidelines for what may or may not constitute "bad faith," no bright-line test is drawn from these cases.  *See, e.g., Rorrer*, 743 F.3d at 1040  (*citing EEOC v. Chevron Philips Chem. Co.*, 570 F.3d at 622); *Canny*, 439 F.3d at 902; *Keith*, 703 F.3d at 924; *Kleiber*, 485 F.3d at 871.

It is clear from the record that Defendant did participate to some extent in ongoing communications and an exchange of information with Plaintiff and her representatives in order to identify a reasonable accommodation following the onset of her dermatitis.  For instance, the record shows communications during the relevant period relating to Plaintiff's dermatitis,

18

including its cause and possible accommodations, between Defendant, Defendant's third-party representative Hazel Pauley, and Plaintiff's doctors and attorneys. Specifically, Lisa Sozzie, Defendant's Director of Human Resources, sent a letter to Dr. Trangle dated November 1, 2012, requesting his opinion and recommendations regarding Plaintiff's ability to return to her position. (Affidavit of Christopher G. Wincek, Esq., Ex. B). Further, documentation and testimony establish that Defendant allowed Plaintiff to try different barriers in attempts to continue working at her original position, and that Plaintiff received notice that she was not qualified for positions in Quality Assurance. Although Plaintiff argues that Defendant should have done more to provide for a reasonable accommodation, she fails to establish that Defendant's actions were so blatantly inadequate so as to definitively demonstrate a failure to participate in good faith in an interactive process. Accordingly, there is a genuine issue of fact as to whether Defendant fulfilled its duty to conduct an "individualized inquiry" to determine whether they could accommodate Plaintiff's disability, and thus summary judgment is not appropriate.

## IV. CONCLUSION

For the foregoing reasons, the undersigned DENIES Plaintiff's Motion for Summary Judgment (Doc. No. 43-3).

/s Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: April 28, 2016